### LAWRENCE v. LOWRIE et al.

(District Court, M. D. Pennsylvania. November 28, 1903.)

1. BANKRUPTCY—FRAUDULENT TRANSFERS—BONA FIDE PURCHASERS—BURDEN OF PROOF.

In proceedings by a trustee in bankruptcy to set aside a fraudulent transfer made by the bankrupt, the burden is on defendants to show that they are bona fide purchasers for value.

2. SAME—JURISDICTION OF DISTRICT COURT.

Under Act Feb. 5, 1903, c. 487, § 16, 32 Stat. 800 [U. S. Comp. St. Supp. 1903, p. 417], amending section 70e of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], and conferring jurisdiction on courts of bankruptcy to set aside fraudulent transfers of the bankrupt, the district court of another district than that in which the bankruptcy proceedings are pending may entertain a suit to set aside a fraudulent transfer made by the bankrupt to parties residing in such other district.

Rule for a Preliminary Injunction.

Charles P. O'Malley, for plaintiff.

M. J. Martin and George D. Taylor, for defendants.

ARCHBALD, District Judge. The fraudulent disposition of his property by Lowrie, the bankrupt, is manifest, and so is the complicity of the defendants therein. Goods sold by different manufacturers to Lowrie, in Buffalo, N. Y., are traced into the possession of Ike Joseph, his former partner, and Moses Hendler, an associate and friend, of Forest City, Pa., and Aaron Schwartz, of Scranton— some through the so-called firm of G. Mitchell & Co., some through Morris Schwartz, a brother of Aaron, who was in the employ of Lowrie, and some from Lowrie direct. No doubt—on the question of identity—goods of the same character could have been purchased elsewhere in the general market by Mitchell & Co., if there was such a firm; but it is not credible that exactly the same job lots of different kinds of goods of half a dozen different manufacturers, who sold to Lowrie, should have been sold to Mitchell & Co., and that they should all turn up together in the defendants' hands, shipped by Mitchell & Co. from the fourth floor of the building

¶ 1. See Bankruptcy, vol. 6, Cent. Dig. § 458.

where Lowrie was located just about the time that they disappeared from Lowrie's establishment below. The scheme is too transparent to stand, and deceives no one. Moreover, the active agent in the shipments from the rooms rented by Mitchell & Co., who seem to have had no other business except to make such shipments, was Harry Joseph, a brother-in-law of Lowrie, and an uncle of Ike Joseph; the latter being also a son-in-law of the defendant Schwartz, whose brother, Moses, as we have seen, was in Lowrie's employ, and was himself the nominal consignor of some of the goods. Moses Hendler, the other defendant, if not a relative, is shown in close association with both the Josephs, as well as with Lowrie. Nor is the force of these facts in any way met by anything to be found in the testimony given before the referee in the Lowrie bankruptcy, where all these parties were examined, which is introduced here. The most damaging evidence is an explanation which does not explain, and that is the character of what they had to say for themselves in the transactions in question. If they were purchasers for value, this is an affirmative defense, and the burden was on them to show it, which they certainly have not done. I am convinced, therefore, by the case as now made out, that the defendants, in collusion with the bankrupt, have in their possession property which he fraudulently disposed of, and I must hold it there by injunction until the matters in controversy can be regularly heard and disposed of.

The jurisdiction of this court is questioned, but is fully sustained by section 70e of the bankruptcy act of July 1, 1898, c. 541, 30 Stat. 565 [U. S. Comp. St. 1901, p. 3451], as amended by the act of February 5, 1903, c. 487, § 16, 32 Stat. 800 [U. S. Comp. St. Supp. 1903, p. 417]. Pond v. Exchange Bank, 124 Fed. 992, 10 Am. Bankr. Rep. 343. It is suggested that it is only the district court in which the proceedings in bankruptcy are pending that is given jurisdiction by the amendment, and that in going into another district, if a federal court is desired, resort must be had to the Circuit Court, with all the jurisdictional requirements fulfilled. But this would carry us back to Bardes v. Hawarden Bank, 178 U. S. 524, 20 Sup. Ct. 1000, 44 L. Ed. 1175, which it was admittedly the purpose of the amendment to overcome. The jurisdiction which is conferred is on any court of bankruptcy, which, as defined in the act, means— speaking generally — any District Court of the United States throughout the states and territories. This jurisdiction, moreover, is made concurrent with that of the state courts, which would have had jurisdiction if bankruptcy had not intervened, which is only fulfilled by giving the trustee the choice, where he goes out of the district of his appointment, of resorting either to the state court which would have been competent to dispose of the case, or to the United States District Court located in the same territory.

Let a preliminary injunction issue as prayed for, to continue until the further order of the Court.

NOTE. It was held in Gregory v. Atkinson, 11 Am. Bankr. Rep. 495, 127 Fed. 183, that the amendment of 1903 conferring jurisdiction upon courts of bankruptcy in common with state courts to set aside a fraudulent transfer

of property by the bankrupt could only be exercised upon the conditions imposed by section 23b, by securing the consent of the proposed defendant. But see Johnston v. Forsyth Mercantile Co., 11 Am. Bankr. Rep. 669, 127 Fed. 845.